UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DANH THANH MAC,

    Petitioner,

v.

WARDEN,

    Respondent.

CAUSE NO. 3:26cv82 DRL-SJF

OPINION AND ORDER

Immigration detainee Danh Thanh Mac, representing himself, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that he is being unlawfully detained in the custody of United States Immigration and Customs Enforcement (ICE). The Warden answered the petition, and Mr. Mac informed the court that he will not file a reply. The court now denies the petition.

Mr. Mac is a native and citizen of Vietnam who entered the United States in 1992 as a lawful permanent resident. In 2007, he was convicted of conspiracy to distribute marijuana and was sentenced to 87 months in prison. This conviction led to a stipulated order of removal to Vietnam in 2013 under 8 U.S.C. § 1227(a)(2)(A)(iii) as an aggravated felon [13-1]. After three months in immigration detention, Mr. Mac was released on an order of supervision in September 2013 because he could not be removed to Vietnam. The Warden does not contest that Mr. Mac complied with the terms of his release.

On September 22, 2025, at an in-person ICE check-in, Mr. Mac's supervision order was revoked and he was re-detained by ICE Enforcement and Removal Operations (ERO)

on the basis that there was now a significant likelihood of removal to Vietnam. This habeas petition was filed in January 2026, alleging Mr. Mac's re-detention was unlawful because his removal to Vietnam was not foreseeable. He argued there is no indication that travel documents are forthcoming. A 2008 repatriation agreement between the United States and Vietnam does not apply to individuals like Mr. Mac, who arrived in the United States before July 12, 1995. A later Memorandum of Understanding between Vietnam and the United States from 2020 allows for repatriation for certain individuals who arrived in the United States before 1995, but he says ICE cannot show that he is eligible for repatriation under this agreement.

In answering the petition, the Warden (through federal counsel) provides a declaration from a supervisory detention and deportation officer, detailing the steps that have been taken to effectuate Mr. Mac's removal to Vietnam. On November 23, 2025, a travel document request for Mr. Mac was submitted to Removal and International Operations' headquarters for processing, but it was returned around December 23, 2025, because the travel document request was incomplete [13-2]. On February 19, 2026, ICE ERO provided Mr. Mac with an updated travel document request to complete; but, as of April 2, 2026, when the declaration was signed, Mr. Mac had not returned the updated travel document request. The officer attests that once travel documents are issued for Mr. Mac, ICE ERO will expeditiously coordinate Mr. Mac's removal by commercial air or on an ICE-initiated charter. Mr. Mac does not contest that he did not complete the renewed travel document request.

The Warden first argues that this court lacks subject matter jurisdiction to consider the petition based on 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 2-3 (N.D. Ind. Mar. 26, 2026); *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005); *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Vu v. English*, No. 3:25cv999, 2026 WL 194171, 2-3 (N.D. Ind. Jan. 26, 2026) (discussing § 1252(b)(9) and § 1252(g)); *Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 1-2 (N.D. Ind. Jan. 14, 2026) (discussing § 1252(g)).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Mac ended in 2013. 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] Given his criminal conviction, Mr. Mac's

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

detention is authorized by § 1231(a)(6), the statute the Warden relies on for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure

4

removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments" — such as the status of repatriation negotiations — are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667

F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 4-5 (N.D. Ind. Jan. 26, 2026); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 3-4 (N.D. Ind. Jan. 14, 2026).[2] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Because Mr. Mac has been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable. To start, the Warden identifies Vietnam as the only country under consideration for removal. Mr. Mac has identified potential obstacles to his removal to Vietnam, but his failure to complete the renewed travel document request from February 2026 precludes the court from saying at this point this his removal is not reasonably foreseeable.

Relevant to this determination is *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003). There, the immigration detainee refused to complete an application for travel documents to

---

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

6

Poland, and Poland expressly required the information on the application to determine whether it would issue him travel documents. *Id.* at 1059. The immigration detainee further frustrated removal efforts by providing the government with conflicting information about his identity and family. *Id.* The Ninth Circuit reasoned that "the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock" and held that "an alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the [government's] efforts to remove him." *Id.* at 1060-61. Though neither the Supreme Court nor the Seventh Circuit appear to have addressed this precise issue in the immigration context, this seems a rather sensible rule — after all, one cannot typically create or self-inflict an alleged constitutional or other harm all one's own and then maintain standing to complain about it. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021) (injury must be fairly traceable to defendant for standing to exist). Several federal courts that have addressed this concern in immigration cases have unanimously agreed with the Ninth Circuit. *See, e.g., Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019); *Hook v. Lynch*, 639 F. Appx. 229 (5th Cir. 2016); *Kovalev v. Ashcroft*, 71 F. Appx. 919, 924 (3d Cir. 2003); *Souleymane v. Olsen*, 2026 WL 785596, 4 (S.D. Ind. Mar. 20, 2026). This rule is also consistent with 28 U.S.C. § 1231(a)(1)(C), which extends the removal period if an individual refuses to cooperate with removal efforts, and 8 C.F.R. § 241.5(a)(2), which requires such cooperation as a mandatory condition of supervised release.

It is possible that Mr. Mac had a valid reason for not completing the travel document request or that the request would have failed anyway. But he provided no explanation for his failure to complete those documents. He cannot say his removal is not reasonably foreseeable if he does not cooperate with the government's attempts to remove him.

For these reasons, the court DENIES the petition (ECF 8) and DIRECTS the clerk to close this case.

SO ORDERED.

June 17, 2026                                     *s/ Damon R. Leichty*
                                                         Judge, United States District Court